**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-20307-CV-SCOLA/TORRES

JAMES BELL,

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.

_____/

**REPORT AND RECOMMENDATION**
**ON MOTION TO VACATE PLEA AND SENTENCE**

    This matter is before the Court on James Bell's motion to vacate his plea and sentence pursuant to 28 U.S.C. § 2255.  [D.E. 1].  Bell argues that his trial attorneys, Adam K. Goodman and Larry R. Handfield, provided ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution. The motion is fully briefed, [D.E. 2, 6, 15, 18, 19, 36], and the matter has been referred to the undersigned for a report and recommendation, [D.E. 21].  The Court held an evidentiary hearing on August 16, 2023, with Bell, Goodman, and Handfield appearing as witnesses. Therefore, the motion is now ripe for disposition.  After careful review of the record, the briefing, the applicable law, the testimony of witnesses, and the oral arguments of counsel, we conclude that the motion should be **DENIED**.

## I. FACTUAL BACKGROUND

On May 31, 2016, Bell shot a man in the face after the two engaged in an argument outside of a small shopping plaza in Miami Gardens. The victim survived but refused to cooperate with law enforcement. According to another eyewitness, however, after shooting the victim Bell fled the scene in a white Chevrolet Impala and wearing a black hoodie. This was corroborated to some extent by surveillance video that captured the argument that preceded the shooting.

When police observed and stopped the suspected Impala, they found Bell in the front passenger seat, a black hoodie in the back, and a handgun in the driver's purse. Police later matched that handgun to a shell casing found at the scene of the crime through a ballistics test.

A federal grand jury indicted Bell with one count of being a felon in unlawful possession of a firearm and ammunition. Bell hired Goodman to defend him in the case. As things progressed, federal prosecutors communicated to Goodman that, in exchange for Bell's guilty plea, the Government would agree to recommend that Bell be sentenced to the mandatory minimum sentence – 15 years in federal prison.

In relaying that plea offer to his client, Goodman accurately informed Bell that this "deal" would not obligate the judge in the case to sentence Bell to the 15-year mandatory minimum. By contrast, considering Bell's lengthy criminal history, Goodman explained that the judge would have the discretion to sentence Bell to a substantially longer sentence. Goodman further informed Bell that, if he were to

2

plead guilty in exchange for the Government's 15-year recommendation, he *could* be required to spend the remainder of his life in prison if the Judge decided to ignore the parties' recommendations. Nevertheless, because of the Government's evidence and Bell's criminal history, Goodman encouraged Bell to plead guilty.

In response to the plea offer, Bell informed Goodman via email that if his sentencing guideline range was accurately estimated to exceed the 15-year mandatory minimum then he was "NOT TAKING IT" and was "READY FOR TRIAL." [D.E. 32-1].[1] Bell then on his own hired Handfield as co-counsel. He also rejected the plea offer. Handfield, who had previously represented Bell in state court, also encouraged Bell to plead guilty because of the Government's evidence and Bell's criminal history. Bell proceeded to trial despite this advice from two experienced lawyers.

Right before the Government called the final witness in its case-in-chief, the presiding judge asked Bell whether any plea offers had been communicated to him. Bell confirmed that Goodman informed him of the 15-year plea offer, but he added that Goodman told him that accepting such an offer *would* result in a life sentence. Goodman then clarified what he said to his client – i.e., that the Government's 15-year recommendation was not binding on the Judge and, in light of Bell's criminal history, it was possible for the Judge to impose a life sentence. The presiding Judge explained to Bell that Goodman was correct because, regardless of the Government's

---

[1]  This email was admitted into evidence at the hearing without objection.

3

recommendation, the Judge would determine the sentence that should be imposed pursuant to Bell's guilty plea.

After this inquiry regarding plea offers, the Court recessed and the parties negotiated a new plea deal. Under this new verbal agreement, the Government would ask for a sentence between 20 and 30 years in exchange for Bell's guilty plea. Furthermore, Bell would be permitted to argue for a 15-year sentence. Bell subsequently pled guilty to the charged crime and thereby initiated the sentencing process.

Bell then filed objections to the presentence investigation report drafted by the probation officer. After determining at the sentencing hearing that Bell's final total offense level was 35, the presiding Judge asked the probation officer to define Bell's revised guideline calculation. In response, the probation officer apparently misspoke.[2] With a total offense level of 35 and a criminal history category of *IV*, said the probation officer, Bell's advisory guideline range was 292 to 365 months. According to the sentencing table, a total offense level of 35 and a criminal history category of IV necessitate a guideline range of 235 to 293 months. But the probation

---

[2] The record is not entirely clear regarding whether the probation officer misspoke or the court reporter erred in transcribing the probation officer's statement. Both the Government and Bell's counsel appear to take the position that it was a speaking error that was then accurately transcribed by the court reporter. We find that, regardless of whether a speaking error or a transcription error occurred, the presiding Judge understood the information that the probation officer intended to communicate – total offense level of 35, criminal history category of VI, and a resulting advisory guideline range of 292 to 365 months.

officer meant to say *VI*, which accurately reflected the criminal history category defined in the presentence investigation report and corresponded with the guideline range of 292 to 365 months. Bell's counsel did not object to the probation officer's misstatement. The presiding Judge subsequently imposed a lighter sentence than the applicable guideline range, varying downward to sentence Bell to 264 months of imprisonment.

## *II. ANALYSIS*

Bell now seeks to vacate his judgment and sentence on the theory that he was denied effective assistance of counsel because (1) his counsel provided deficient plea advice, (2) his counsel failed to object to an enhanced base offense level under U.S.S.G. § 2A2.1(a) on the grounds that the Government could not prove that the shooting was premeditated, (3) he is actually innocent of the Armed Career Criminal Act enhancement, and (4) his counsel failed to object to the probation officer's misstatement regarding the applicable criminal history category.[3]

---

[3] Regarding the third basis for habeas relief, Bell concedes that this argument is foreclosed by precedent and that he is therefore raising the issue only to preserve it for the purpose of seeking modification of the law by a higher tribunal. We consider the issue timely raised but, because we are bound by precedent to rule against this argument, we do not discuss it further than stating that it is not a proper basis for relief at this juncture.

Regarding the fourth basis for habeas relief, Bell raised this issue *pro se* in a supplementary letter filed separately from his initial habeas petition. [D.E. 18]. This Court ordered Bell's habeas counsel to file a reply on this issue, which they timely did, therein conceding that the failure of Bell's sentencing counsel to object to the probation officer's speaking error does not create a viable basis for habeas relief.

The Sixth Amendment to the United States Constitution guarantees to the criminal accused the "the right to have the assistance of counsel for his defense." U.S. CONST. amend. VI. "To protect counsel's independence, we start with the strong presumption that trial counsel's performance was constitutionally adequate." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1238 (11th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). In other words, "Courts should presume effectiveness and avoid second-guessing with the benefit of hindsight." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Therefore, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

For an ineffective assistance of counsel claim to succeed, the defendant must establish both that (1) his counsel's "performance was deficient" and (2) his counsel's "deficient performance prejudiced the defense." *McKathan v. United States*, 969 F.3d 1213, 1222 (11th Cir. 2020) (quoting *Strickland* 466 U.S. at 687). The deficiency prong under *Strickland* requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *See Strickland,* 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)); *see also Wood v. Allen,* 542 F.3d 1281, 1309 (11th Cir. 2008) ("[O]ther

6

attorneys might have done more or less . . . or they might have made the strategic calls differently, but we cannot say that no reasonable attorney would have done as [he] did.") (quoting *Williams v. Head,* 185 F.3d at 1223, 1224 (11th Cir. 1999)). For the prejudice prong, specifically in the context of pleas, courts must determine whether a reasonable probability exists that "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *McKathan*, 969 F.3d at 1223.

The *Strickland* test is difficult to meet because a petitioner bears the burden of proof for both the performance prong and the prejudice prong – both of which must be proved for a petitioner to prevail. *See Jones v. GDCP Warden,* 753 F.3d 1171, 1184 (11th Cir. 2014) (noting that the prejudice prong is difficult to meet because the petitioner "has to show that every fair-minded jurist would conclude that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.");[4] *see also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A court need not address both prongs if the defendant has made an insufficient showing on one.").

Criminal defendants are entitled to the effective assistance of counsel during plea negotiations. *Missouri v. Frye,* 566 U.S. 134, 140-44 (2012); *Lafler v. Cooper*,

---

[4] The "reasonable probability" standard "is less than proof by a preponderance of the evidence." *Agan v. Singletary,* 12 F.3d 1012, 1018 (11th Cir. 1994); *see also Strickland,* 466 U.S. at 693 ("We believe that a petitioner need not show that counsel's deficient performance more likely than not altered the outcome [.]").

7

566 U.S. 156, 165 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). The Supreme Court has affirmed that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Lockhart*, 474 U.S. at 58-59. The same standard applies whether the defendant accepted or rejected the plea offer. *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995); *Holmes v. United States*, 876 F. 2d 1545, 1551 (11th Cir. 1989).

Here, we begin our analysis with Bell's claim that he received deficient plea advice. We find as a factual matter that Bell did *not* receive deficient advice, however, because Goodman accurately informed him regarding the risk of pleading guilty pursuant to the Government's 15-year offer and Bell understood the true nature of this risk. Thus, Bell's first claim for habeas relief must fail.

Based upon the evidence adduced at the hearing as well as the record in the underlying case, we credit the testimony of Goodman and Handfield as to how the plea offer was explained to Bell. Contemporaneous written evidence contradicts Bell's claimed confusion, and we therefore do not credit Bell's testimony where it conflicts with the evidence provided by his trial counsel. Put differently, we do not believe that Bell understood that he *would* receive a life sentence if he pled guilty pursuant to the 15-year deal; rather, we find that Bell understood that, because of his criminal history and the judge's discretion in sentencing, he *could* receive a life sentence if he chose to plead guilty. As the presiding Judge noted at Bell's trial, Goodman accurately characterized the applicable law when he explained the

8

sentencing risk associated with Bell's guilty plea. *See, e.g.*, FED. R. CRIM. P. 11(c). And the record reflects that, at the time the 15-year deal was on the table, Bell comprehended Goodman's characterization of the plea-deal process because Bell sought to confirm the calculation of his guidelines range via email before responding to the plea offer. In other words, because Bell knew that he may not receive a 15-year sentence even if the Government recommended it, he sought other information that the judge would rely on to determine the appropriate sentence as a way to gauge the risk involved in pleading guilty at that stage of the case. In light of Goodman's accuracy and Bell's comprehension, we cannot say that Bell's counsel's performance was deficient and therefore we cannot recommend that Bell be granted relief under *Strickland* and its progeny.

Bell's next argument is a little more nuanced but no more persuasive. Here, he notes that his counsel failed to object to a specific enhancement in his base offense level. Under U.S.S.G. § 2A2.1(a), a base offense level of 33 applied only if the object of the offense would have constituted first-degree murder – i.e., a crime that requires proof of premeditation. Bell submits that the Government had "no evidence" that the shooting was premeditated and therefore his counsel deficiently failed to object to this offense level enhancement because, if they had objected, the Government would have been unable to meet its burden to prove premeditation by a

9

preponderance of the evidence.[5]  This argument is untethered from reality and accordingly fails.

It is important to recall that, by the sentencing phase, the Judge had already presided over most of Bell's trial.  And during this trial, the Government introduced into evidence, among other things, a surveillance video that showed Bell pointing a gun at and arguing with his victim before pulling the trigger.  Indeed, Bell can be seen pointing the gun at the victim twice during the argument without firing the weapon.  Thus, there is evidence in the record to prove that Bell had time to reflect on his actions – and therefore form the requisite intent to kill – before he pointed the gun at his victim for a third time and pulled the trigger.  *See, e.g., Reaves v. Sec., Fla. Dept. of Corr.*, 717 F.3d 886, 902 (11th Cir. 2013) ("Premeditation is defined . . . as a 'fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about commit and the probable result of that act.'") (interpreting Florida law); *United States v. Weise*, 89 F.3d 502, 505 (8th Cir. 1996) ("first-degree murder is a killing with malice aforethought and premeditation") (interpreting 18 U.S.C. § 1111(a)).

---

[5] To be clear, Bell did object to this base offense level calculation, but he did so for a different reason.  Instead of arguing that the Government could not prove premeditation, he argued that the base offense level calculation was erroneous because the evidence did not support that Bell fired a weapon.  Bell's habeas motion appears to couch this issue as though his sentencing counsel made no argument against the probation officer's base offense level calculation; however, Bell's complaint is that his lawyers should have made a different argument.

From this record, it is impossible to find that the Government had no evidence of premeditation. The Government clearly had admissible evidence to prove that Bell's actions were premeditated. Accordingly, we discern no constitutional deficiency in counsel's performance with respect to their alleged failure to raise a specific objection regarding evidence of premeditation. *Strickland* relief is not warranted here either.

Bell's final two arguments have been conceded by his habeas counsel to be dead on arrival. With respect to his actual innocence claim, Bell admits that this argument does not entitle him to habeas relief and has been raised only in the hope that a higher tribunal will modify the applicable case law. And with respect to Bell's *pro se* claim that his sentencing counsel was deficient, we agree with Bell's habeas counsel that neither Goodman nor Handfield erred by failing to object to the probation officer's speaking error. The presentence investigation report, which the sentencing judge adopted, stated that Bell's criminal history category was VI – not IV. In conjunction with a base offense level of 35, a criminal history category of VI yields the guideline range calculated by the probation officer during the sentencing hearing: 292 to 365 months. It is obvious from the record that, assuming the probation officer misspoke, that error did not affect the judge's understanding of the correct calculation under the sentencing guidelines. The speaking error also did not impact Bell's lawyers' understanding that the correct guidelines range was 292 to 365 months of imprisonment, as they were able to persuade the judge to impose a lighter sentence

than what was suggested by the guidelines. We find no deficiency here either, and so *Strickland* relief is not warranted in this case.

### III. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** that the Motion [D.E. 1] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to extend the time for any objections to this Report and Recommendation given Defendant's present housing status and the need for counsel to communicate with him on their strategy going forward. The Court thus grants the parties twenty-one (21) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).[6]

---

[6] For administrative purposes, and given the extended time for objections, good cause also exists to close the action pending the filing of any objections. The closing of the action does not preclude the filing of such objections, nor preclude the parties from seeking to reopen the action for further proceedings.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 22nd day of September, 2023.

>  */s/ Edwin G. Torres*
> EDWIN G. TORRES
> United States Magistrate Judge